IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | CIVIL ACTION NO. 13-0472-CG-C |
| ) | |
| CARNIVAL CORPORATION, et al, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANUM OPINION AND ORDER**

This matter is before the court on the motion of the United States for partial summary judgment (Doc. 68), the response of Carnival Corporation (Doc. 74) and the United States' reply (Doc. 78). For the reasons stated below, the court finds that §§ 408 and 412 do not provide strict liability for damage incurred by the dredging vessel M/V WHEELER on April 3, 2013, and that the United States' motion is due to be denied.

**I. Facts**

This case arises from the allision of the M/V CARNIVAL TRIUMPH ("TRIUMPH") with the M/V WHEELER on April 3, 2013. The TRIUMPH is a cruise ship owned and operated by Carnival Corporation. (Doc. 1, ¶ 2). The TRIUMPH was undergoing repair at BAE Shipyard's facility on April 3, 2013, when a storm struck. (Doc. 1, ¶¶ 4, 8, 9). The TRIUMPH broke free from her moorings and drifted across the Mobile River and struck the M/V WHEELER, which was moored at the time. (Doc. 1, ¶ 10). The M/V WHEELER is a dredging vessel owned and operated by the

U.S. Army Corps of Engineers, with its home-port at the New Orleans District. (Doc. 1, ¶ 11).

**II. Discussion**

The United States moves for partial summary judgment on the purely legal question of whether §§ 408 and 412 of the Rivers and Harbors Act of 1899 applies when a cruise ship allides with a moored dredging vessel owned by the United States. The parties do not dispute the pertinent facts on this issue, but dispute whether these strict liability sections apply to an allision with a dredging vessel, especially where the dredging vessel was under repair at the time and was far away from the location where it had been used by the Army Corps of Engineers.

"Section 408 makes it unlawful for any person to damage or otherwise interfere with a public work built by the United States to aid navigation or prevent floods." In re Barnacle Marine Management Inc., 233 F.3d 865, 867 (5th Cir. 2000) (footnote omitted). Section 408 states the following:

> **§ 408. Taking possession of, use of, or injury to harbor or river improvements**
> It shall not be lawful for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, or any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, or as boundary marks, tide gauges, surveying stations, buoys, or other established marks, nor remove for ballast or other purposes any stone or other material composing such works: *Provided*, That the Secretary of the Army may, on the recommendation of the Chief of Engineers, grant permission for the temporary occupation or use of any of the aforementioned public works when in

> his judgment such occupation or use will not be injurious to the public interest: *Provided further*, That the Secretary may, on the recommendation of the Chief of Engineers, grant permission for the alteration or permanent occupation or use of any of the aforementioned public works when in the judgment of the Secretary such occupation or use will not be injurious to the public interest and will not impair the usefulness of such work.

33 U.S.C. § 408. Remedies for violations of § 408 are provided for in §§ 411 and 412 of the Rivers and Harbors Act. Section 412 states in pertinent part:

> And any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, and 409 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of the damages done by said boat, vessel, scow, raft, or other craft ... and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof.

33 U.S.C. § 412.

The United States contends that the dredging vessel at issue was a "floating plant" used to construct, preserve, or maintain federal projects that improve navigable waters. According to the United States, because dredging improves federal waters for the purpose of navigation, it should be considered a "work" under § 408. The question is whether "other work" as it was used in the statute, includes jobs or projects such as dredging or a dredged waterway, or if it only includes physical structures such as those listed in the statute: "any sea wall, bulkhead, jetty, dike, levee, wharf, [or] pier."

"We first consider 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.' " <u>Roberts v. Sea-Land Services, Inc.</u> 132 S.Ct. 1350, 1356, 182 L.Ed.2d 341 (2012) (quoting

3

Robinson v. Shell Oil Co., 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997)). In construing the Act, as with any statute, " 'we look first to its language, giving the words used their ordinary meaning.' " Id. (quoting Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs, 519 U.S. 248, 255, 117 S.Ct. 796, 136 L.Ed.2d 736 (1997)). Section 408 states that "[i]t shall not be lawful … to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States …" A plain reading of this part of the statute indicates that "work" refers to a physical structure. First, "work" must refer to physical structures because the specifically listed examples of "works" are all physical structures. "It is ... a familiar canon of statutory construction that [catchall] clauses are to be read as bringing within a statute categories similar in type to those specifically enumerated." Federal Maritime Comm'n v. Seatrain Lines, Inc., 411 U.S. 726, 734, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973) (citation omitted); see also Christopher v. SmithKline Beecham Corp., 132 S.Ct. 2156, 2171 n. 19, 183 L.Ed.2d 153 (2012) ("The canon of *ejusdem generis* 'limits general terms [that] follow specific ones to matters similar to those specified.' " citation omitted); In re Brown, 746 F.3d 1236, 1240 (11th Cir. 2014) ("a well-established canon 'of statutory construction [is] that the specific governs the general.' " citation omitted).

Secondly, §408 describes the "work" as having been "built" by the United States. "Built" is the past tense of "build" which is commonly defined as "to form by

combining materials or parts; construct." The American Heritage Dictionary 243 (5th ed. 2011). Thus, the requirement that the work be "built" by the United States implies that materials were combined to form something. A dredging project or dredged waterway does not result from the combining of materials.

Lastly, the actions prohibited by §408 are the type usually done to physical structures. Although this language does not negate the possibility that a dredging project is a "work," it takes a somewhat constrained construction to conclude that the statute intends to prohibit a person from taking possession of, making use of, building upon, altering, defacing, destroying, moving, injuring, obstructing by fastening vessels thereto, or impairing the usefulness of a waterway that has been dredged. Many of the prohibited actions could not be done to a dredged waterway, while others, such as making use of, cannot realistically be prohibited by § 408.

Section 408 goes on to state that it shall not be lawful to take such actions toward "any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters …" A dredging vessel might satisfy the contingencies of a "floating plant" "used for the preservation and improvement of its navigable waters. However, to fit, the dredging vessel must be "used in the construction of such work." "Construct" is commonly defined as "[t]o form by assembling or combining parts; build." The American Heritage Dictionary 243(5th ed. 2011). Thus, the "construction of such work" implies that something physical is

being built or constructed. Accordingly, the plain language of the statute indicates that "work" refers only to physical structures.

"Statutory language, however, 'cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" Roberts, 132 S.Ct. at 1356 (quoting Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989)). In the instant case, "[t]he purpose of the Act is to protect, preserve, and make safe the Nation's navigable waterways, and the United States is the principal beneficiary of the Act." Chotin Transp., Inc. v. U.S., 819 F.2d 1342, 1348 -1349 (6th Cir. 1987) (quoting United States v. Federal Barge Lines, Inc., 573 F.2d 993, 997 (8th Cir. 1978)). Thus, providing damage coverage for a United States vessel that is used to improve the navigability of waterways would serve the general purpose of the Act. However, the court cannot rewrite the statute to fulfill the general purpose of the Act. Had the language been completely ambiguous, a broad reading might lead the court to find dredging vessels were covered by § 408. However, if Congress intended such a result, it did not so provide in this statute. The court notes that § 408 does more than provide damage coverage; it provides strict liability for damage. The court has considered the context of the statute in construing its plain meaning and where, as here, the plain language of the statute clearly indicates the meaning, the court must follow the statute's mandate. Carcieri v. Salazar, 555 U.S. 379, 380, 129 S.Ct. 1058, 1059, 172 L.Ed.2d

791 (2009) ("When a statute's text is plain and unambiguous, the statute must be applied according to its terms." citations omitted).

The United States argues that dredging "is essential to the preservation or improvement of works that the government constructed to enhance the navigability of its waters." (Doc. 68, p. 5).  It is unclear whether the United States is simply asserting that the application of § 408 here serves the general purpose of the act, to which the court agreed above, or further that dredging is necessary for the performance or improvement of levees, piers and other structures built by the United States.  To the extent the United States argues the latter, however, it has not suggested any specific pier or other physical structure that dredging done by the M/V WHEELER preserved or improved.  Such an argument carries even less weight where, as here, the M/V WHEELER was being repaired and far away from where it had been utilized by the United States at the time it was damaged.

The only case on point that the parties and this court are aware of is <u>United States v. The Agioi Victores</u>, 227 F.2d 571 (9th Cir. 1955).  In <u>Agioi Victores</u>, the Ninth Circuit found that § 408 did not apply to damage to a dredging vessel.  The Court applied the principle of *ejusdem generis* and found that "[a] dredged channel has no resemblance to any of the works specified in the section … which are all physical structures." <u>Id.</u> at 573.  The Ninth Circuit further reasoned as follows:

> This is made most clear when we note that the language used says it shall not be lawful 'to make use of' the listed works 'for any purpose', providing however that the Secretary of War may, on the recommendation of the Chief of Engineers, 'grant permission for the temporary * * * use of any of the aforementioned public works'. Obviously this is not referring to a ship channel, for it would be absurd

7

> to suppose one could not 'make use of' it without this special permission.

Id.

The United States contends that this court should not follow the Ninth Circuit's decision. The United States first implies that the Ninth Circuit may have sympathized with the non-governmental party in Agioi Victores because the proximate cause of the collision was the negligence of the crew of the United States' dredging vessel and there was no negligence on the part of the other vessel. The United States also points out that the Supreme Court, in interpreting another section of the Rivers and Harbors Act, § 409, has consistently found the coverage of the Rivers and Harbors Act to be broad. See Wyandotte Transp. Co. v. United States, 389 U.S. 191, 201 (1967). The United States also argues that dredging has been described as "work" in other parts of the Rivers and Harbors Act and that other statutes have referred to dredging as "work." See e.g. 33 U.S.C. § 622(a)-(c).

However, Agioi Victores has stood for almost 60 years and came to the same conclusion that this court has: that under the plain language of the statute § 408 does not provide strict liability for dredging vessels. The fact that "work" has been used differently in other statutes does not show that Congress intended for it to be used the same way in § 408. The United States has not shown that Congress intended to provide strict liability for damage to dredging vessels. The court finds that the plain language of § 408 does not provide strict liability for damage to dredging vessels, especially a dredging vessel that had been removed for repairs and was not in use at the time of the damage. The arguments to the contrary do not

8

overcome the statute's plain meaning. See Iberiabank v. Beneva 41-I, LLC, 701 F.3d 916, 924 (11th Cir. 2012) ("If the text of the statute is unambiguous, we need look no further. We will look beyond the plain language of the statute to evidence of congressional intent only if the statute's language is ambiguous; applying the plain meaning of the statute would lead to an absurd result; or there is clear evidence of contrary legislative intent." citation omitted).

## III. Conclusion

For the reasons stated above, the motion of the United States for partial summary judgment (Doc. 68) is **DENIED**.

**DONE** and **ORDERED** this 19th day of September, 2014.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE